Case No. 26-15

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

CITY OF HUNTINGTON BEACH, a California Charter City, HUNTINGTON BEACH CITY COUNCIL, HUNTINGTON BEACH POLICE DEPARTMENT, HUNTINGTON BEACH POLICE CHIEF, in his official capacity as Chief of Police, and CHAD BIANCO, in his official capacity as Sheriff, Coroner, and Public Administrator of Riverside County,

> *Appellants*,

> v.

The STATE OF CALIFORNIA, GAVIN NEWSOM, in his official capacity as Governor of the State of California, ROBERT BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-50, inclusive,

> *Appellees*,

National Day Laborer Organizing Network,

> *Intervenor-Defendants-Appellants*

_____

On appeal from the U.S. District Court, Central District of California

_____

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

James K. Rogers
Ryan Giannetti
America First Legal Foundation
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Phone: (202) 964-3721
James.Rogers@aflegal.org

Michael J. Vigliotta
City Attorney
Office of the City Attorney
2000 Main Street, P.O. Box 190
Huntington Beach, CA 92648
(714) 536-5555
MVigliotta@surfcity-hb.org

*Attorneys for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant City of Huntington Beach states that it is a municipal corporation and a California charter city. It has no corporate parent and is not owned in whole or in part by any publicly held corporation.

Appellant Huntington Beach City Council is a legislative body of the City of Huntington Beach. Appellant Huntington Beach Police Department is a department of the City of Huntington Beach. The Huntington Beach Police Chief and Chad Bianco are individuals suing in their official capacities.

# Table of Contents

Corporate Disclosure Statement ................................................................. i

Jurisdictional Statement ........................................................................ 1

Issues Presented ................................................................................ 1

Statement of the Case and Facts .............................................................. 2

I.   California's Sanctuary State Law ....................................................... 2

II.  The Federal Immigration Cooperation Framework ................................... 3

III. Appellants and Their Federal Obligations .......................................... 5

IV.  The Inescapable Catch-22 Confronting Appellants ................................. 6

V.   Procedural History .................................................................... 8

Standard of Review ............................................................................ 9

Argument ...................................................................................... 9

I.   The District Court Misapplied South Lake Tahoe to Circumstances That Do Not Fit the Doctrine. ................................................................ 9

   A.  Congress Conferred Explicit, Substantive Rights–and Standing to Enforce Those Rights–on Local Government Officials and Entities ... 10

   B.  South Lake Tahoe Does Not Apply Because This Is a Defensive, Pre-Enforcement Challenge. .......................................................... 17

II.  Alternatively, South Lake Tahoe Was Wrongly Decided, and This Court Should Overrule It En Banc. ........................................................ 21

III. The Law Enforcement Appellants Have Standing Based on a Credible Threat of Personal Criminal Prosecution. ................................. 24

IV.  The District Court Erred in Dismissing Claims 6 and 7 on Eleventh Amendment Grounds. .......................................................... 29

   A.  Congress Abrogated California's Eleventh Amendment Immunity Through 8 U.S.C. §§ 1373 and 1644. ................................................ 29

   B.  The Ex Parte Young Exception Applies to Individual Defendants Governor Newsom and Attorney General Bonta. ............................... 31

   C.  This Court Has Federal Question Jurisdiction Over Claims 6 and 7 Independent of Sovereign Immunity. ............................................. 32

V.   The District Court Abused Its Discretion by Dismissing Without Leave to Amend ............................................................................... 34

Conclusion ..................................................................................... 36

# Table of Authorities

Page(s)

Cases

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ............................................................... 16

*Arizona v. United States*,
  567 U.S. 387 (2012) ...................................................................... 4, 34

*Barahona v. Union Pac. R.R. Co.*,
  881 F.3d 1122 (9th Cir. 2018) ....................................................... 10, 35

*Branson Sch. Dist. RE-82 v. Romer*,
  161 F.3d 619 (10th Cir. 1998) ............................................................ 22

*City of S. Lake Tahoe v. California Tahoe Regional Planning Agency*
  ("*South Lake Tahoe*"),
  625 F.2d 231 (9th Cir. 1980) ........................................... 10, 20, 25, 27

*City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*,
  937 F.3d 1278 (9th Cir. 2019) ....................................................... 23, 24

*DaVinci Aircraft, Inc. v. United States*,
  926 F.3d 1117 (9th Cir. 2019) ............................................................. 9

*Dellmuth v. Muth*,
  491 U.S. 223 (1989) ......................................................................... 30

*Doe v. Regents of Univ. of Cal.*,
  891 F.3d 1147 (9th Cir. 2018) ............................................................ 32

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................ 35

*Ex parte Young*,
  209 U.S. 123 (1908) ..................................................................... 31, 32

*Fed. Election Comm'n v. Akins*,
  524 U.S. 11 (1998) ....................................................................... 13, 17

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufac-*
  *turing*,
  545 U.S. 308 (2005) ................................................................ 33, 34, 35

*Hoohuli v. Ariyoshi*,
  741 F.2d 1169 (9th Cir. 1984) ............................................................ 30

*Housing Auth. of the Kaw Tribe of Indians v. City of Ponca City*,
  952 F.2d 1183 (10th Cir. 1991) .......................................................... 23

*Indian Oasis-Baboquivari Unified Sch Dist. No. 40 of Pima Cnty., Ariz.*
   *v. Kirk,*
   91 F.3d 1240 (9th Cir. 1996) ........................................................ 24
*Lopez v. Candaele,*
   630 F.3d 775 (9th Cir. 2010) .......................................................... 9
*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ..................................................................... 20
*Morton v. De Oliveira,*
   984 F.2d 289 (9th Cir. 1993) ........................................................ 22
*Nayab v. Capital One Bank (USA), N.A.,*
   942 F.3d 480 (9th Cir. 2019) ........................................................ 16
*Okanogan School District #105 v. Superintendent of Public Instruction*
   *for Washington,*
   291 F.3d 1161 (9th Cir. 2002) ............................................ 13, 14, 15
*Pac. Bell v. Pac W. Telecomm, Inc.,*
   325 F.3d 1114 (9th Cir. 2003) ...................................................... 10
*Palomar Pomerado Health System v. Belshe,*
   180 F.3d 1104 (9th Cir. 1999) ............................................ 13, 14, 22
*Rogers v. Brockette,*
   588 F.2d 1057 (5th Cir. 1979) .................................................. 23, 24
*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ................................................................ 12, 15
*Steffel v. Thompson,*
   415 U.S. 452 (1974) ..................................................................... 27
*Steshenko v. Gayrard,*
   70 F. Supp. 3d 979 (N.D. Cal. 2014) ............................................ 32
*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ................................................................ 17, 20
*United States v. United Healthcare Ins. Co.,*
   848 F.3d 1161 (9th Cir. 2016) ...................................................... 36

Statutes

8 U.S.C. § 1324 ................................................................... Passim
8 U.S.C. § 1325 ................................................................. 19
8 U.S.C. § 1373 ................................................................... Passim
8 U.S.C. § 1644 ................................................................. 4, 12, 31
18 U.S.C. § 4 ...................................................................... Passim

iv

18 U.S.C. § 371 ...................................................................... 5, 7, 26, 28

18 U.S.C. § 372 ............................................................................... 5, 26

18 U.S.C. § 1512 ............................................................................. 5, 26

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1331 ............................................................................... 1, 33

28 U.S.C. § 1367 ................................................................................... 1

42 U.S.C. § 1983 ................................................................................... 9

Article XI, sections 3 and 5 of the California Constitution ...................... 5

California Government Code §§ 7282, 7282.5, 7284, 7284.2, 7284.4, 7284.6, 7284.8, 7284.10, and 7284.12 ................................................... 3

California Penal Code §§ 31 and 32 ............................................. 9, 29, 34

Rules

FRAP 4(a)(1)(A) ..................................................................................... 1

Fed. R. Civ. P. 15(a)(2) ........................................................................ 35

FRAP 26.1 ............................................................................................. 1

Other Authorities

3 H.R. Conf. Rep. 104-725, at 383 ....................................................... 31

1996 U.S.C.C.A.N. 2649 ...................................................................... 31

SB 54 ..................................................................................................... 3

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over Appellants' state law claims under 28 U.S.C. § 1367. The district court entered final judgment dismissing all claims by order dated December 1, 2025. ER_003–17 (the "Order"). This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final judgment of the United States District Court for the Central District of California.

The notice of appeal was timely filed within thirty days of the district court's final order of December 1, 2025, in compliance with Fed. R. App. P. 4(a)(1)(A).

## ISSUES PRESENTED

1. Did the district court err when it held that the City Plaintiffs—a municipality, its council, its police department, and its police chief—lacked Article III standing under the *South Lake Tahoe* doctrine to challenge California's Sanctuary State Law, notwithstanding that Congress expressly conferred substantive, enforceable rights upon "local government entit[ies]" in 8 U.S.C. §§ 1373 and 1644?

2. Did the district court err when it held that the Law Enforcement Appellants—the police chief and county sheriff suing in their official

1

capacities—lacked standing, even though compliance with California's Sanctuary State Law requires those officials, without any exercise of discretion, to commit federal crimes and thereby subjects them to a credible, personal threat of criminal prosecution?

3. Did the district court err when it dismissed Claims 6 and 7 as barred by the Eleventh Amendment, when (a) Congress unambiguously abrogated California's sovereign immunity through 8 U.S.C. § 1373 and 1644 and (b) the *Ex parte Young* exception strips individual defendant-officials of immunity for prospective injunctive relief?

4. Did the district court abuse its discretion by dismissing all claims without leave to amend, when this was the Defendants' first successful challenge to the pleadings, and amendment would not be futile?

## STATEMENT OF THE CASE AND FACTS

### I. California's Sanctuary State Law

In 2017, California enacted Senate Bill 54 ("SB 54"), which was codified at California Government Code §§ 7282, 7282.5, 7284, 7284.2, 7284.4, 7284.6, 7284.8, 7284.10, and 7284.12. These and other statutes, California Government Code §§ 7282, 7282.5, 7283-7283.2, 7284-7284.12, and 7285-7285.3 (collectively, the "Sanctuary State Law"), prohibit California law enforcement agencies from, among other things: (1) inquiring

2

into an individual's immigration status; (2) detaining an individual on the basis of a federal immigration hold request; (3) providing information regarding an individual's release date to federal immigration authorities; (4) sharing home addresses or other personal information with immigration authorities; (5) making or participating in arrests based on civil immigration warrants; (6) assisting federal immigration authorities in interrogating or arresting an alien; (7) performing the functions of an immigration officer; (8) transferring an individual to immigration authorities without a judicial warrant; (9) contracting with the federal government to house immigration detainees; and (10) providing office space to immigration authorities.

## II.    The Federal Immigration Cooperation Framework

Congress has long mandated a cooperative relationship between federal immigration authorities and local law enforcement. The Supreme Court has confirmed that "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394-95 (2012). That broad authority is exercised in part through federal statutes that specifically empower—and obligate—local government entities to cooperate with federal immigration enforcement.

Under the heading "Additional Authority of Government Entities," 8 U.S.C. § 1373(b) provides that "[n]otwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity" from sending, receiving, maintaining, or exchanging with any other federal, state, or local government entity information regarding the immigration status of any individual. Similarly, 8 U.S.C. § 1644 provides that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States." Both statutes expressly preempt any conflicting Federal, State, or local law.

Federal criminal law also penalizes obstruction of immigration enforcement. It is a federal crime to harbor or shield from detection any alien who has entered or remained unlawfully. 8 U.S.C. § 1324(a)(1)(A). Federal law also criminalizes: concealment of known federal felonies (18 U.S.C. § 4); conspiracy to commit offenses against the United States (18 U.S.C. § 371); conspiracy to impede federal officers in the discharge of

their duties (18 U.S.C. § 372); and obstruction of communications to law enforcement about federal crimes (18 U.S.C. § 1512).

## III. Appellants and Their Federal Obligations

Appellants are the City of Huntington Beach, a California charter city incorporated under Article XI, sections 3 and 5 of the California Constitution; the Huntington Beach City Council; the Huntington Beach Police Department; the Chief of the Huntington Beach Police Department, in his official capacity; and Chad Bianco, Sheriff, Coroner, and Public Administrator of Riverside County, in his official capacity. Second Amended Complaint ("SAC"), ER_060–061 ¶¶ 1-5.

Appellants are among the "local government entit[ies]" to which Congress granted explicit, substantive rights under 8 U.S.C. §§ 1373 and 1644. They are also subject to federal criminal law, including 8 U.S.C. § 1324 and 18 U.S.C. §§ 4, 371, 372, and 1512. As governmental entities responsible for law enforcement in their jurisdictions, Appellants and their officers are obligated to cooperate with federal authorities in the enforcement of federal criminal statutes, including the federal immigration laws described above.

The Sanctuary State Law, however, affirmatively commands Appellants to do the opposite. By restricting the transfer of detainees, the

5

sharing of immigration status information, the honoring of ICE detainers, and virtually all other forms of cooperative immigration enforcement, the Sanctuary State Law requires Appellants to refrain from precisely the conduct that federal law—at pain of criminal sanction—requires them to perform.

## IV.   The Inescapable Catch-22 Confronting Appellants

Appellants are caught in an irreconcilable conflict. If they comply with the Sanctuary State Law, they risk criminal liability under federal statutes that prohibit harboring illegal aliens, concealing federal felonies, and conspiring to impede federal officers. If they comply with federal law and cooperate with federal immigration enforcement, they risk punitive action by California's Governor and Attorney General, each of whom has publicly pledged to enforce the Sanctuary State Law.

This is not a remote or theoretical risk. Governor Newsom and Attorney General Bonta have repeatedly and publicly declared their intent to enforce the Sanctuary State Law against local officials who cooperate with federal immigration enforcement. SAC, ER_097–099, ¶¶ 169-174, ER_115 ¶ 261. Other states have already brought enforcement actions against local law enforcement officials for sharing information with ICE.

6

*See, e.g., State of Washington v. Adams County Sheriff's Office*, No. 25-2-01212-32 (Spokane Cnty. Sup. Ct., Washington, filed Mar. 10, 2025).

The federal government has made clear that obstruction of immigration enforcement will be prosecuted. Then-Acting Deputy Attorney General Emil Bove's January 21, 2025 memorandum instructed that U.S. Attorneys shall investigate and prosecute incidents involving misconduct for obstructing federal functions in violation of 18 U.S.C. § 371, and violations of 8 U.S.C. §§ 1324 and 1373. Emil Bove, *Memorandum Re: Interim Policy Changes Regarding Charging, Sentencing, and Immigration Enforcement*, DEP'T OF JUSTICE, (Jan. 21, 2025) https://perma.cc/YUQ9-R9JV. Then-Attorney General Pam Bondi's February 5, 2025 memorandum similarly directed all U.S. Attorney's Offices to investigate and prosecute such violations. Pam Bondi, *Memorandum Re: Sanctuary Jurisdiction Directives*, DEP'T OF JUSTICE, (Feb. 5, 2025) https://perma.cc/Q5S2-WU64.

These are not idle warnings: the Department of Justice has separately filed criminal charges against a sitting federal Congresswoman, a sitting Wisconsin state court judge, and a sitting New Mexico state court

judge for helping aliens evade apprehension or interfering with ICE officers.

Appellants accordingly filed this action seeking declaratory and injunctive relief to resolve this irreconcilable conflict. The district court dismissed the entire action for lack of standing, without reaching the merits.

## V. Procedural History

Appellants filed their original Complaint in January 2025, asserting ten causes of action challenging the Sanctuary State Law under federal and California law. After two rounds of amendments, Appellants filed their Second Amended Complaint, SAC, ER_053-154, asserting: Claims 1-5 (violations of the Supremacy Clause, Naturalization Clause, 8 U.S.C. §§ 1373 and 1644, and federal criminal statutes 18 U.S.C. §§ 4, 371, 372, and 1512, and 8 U.S.C. § 1324), ER_092-108 ¶¶ 141-221; Claims 6-7 (violations of California Penal Code §§ 31 and 32 and the California Constitution), ER_108-113 ¶¶ 222-245; Claim 8 (violation of the First Amendment), ER_113-114 ¶¶ 246-255; Claim 9 (violation of 42 U.S.C. § 1983), ER_114-116 ¶¶ 256-262; and Claim 10 (non-statutory cause of action under E*x parte Young*), ER_116-117 ¶¶ 263-267.

Defendants moved to dismiss the SAC for lack of standing under Rule 12(b)(1) and on Eleventh Amendment grounds. On December 1,

2025, the district court issued an order, ER_003-017, granting Defendants' motion and dismissing all ten claims without prejudice and without leave to amend. Appellants timely appealed.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019). Standing is a question of law subject to de novo review. *Lopez v. Candaele*, 630 F.3d 775, 784-85 (9th Cir. 2010). The Court also reviews de novo questions of Eleventh Amendment immunity and subject matter jurisdiction. *Pac. Bell v. Pac W. Telecomm, Inc.*, 325 F.3d 1114, 1123 n.8 (9th Cir. 2003). The denial of leave to amend is reviewed for abuse of discretion. *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).

## ARGUMENT

**I. The District Court Misapplied South Lake Tahoe to Circumstances That Do Not Fit the Doctrine.**

The district court dismissed Claims 1 through 5 and 8 through 10 as to the City Plaintiffs based on *City of S. Lake Tahoe v. California Tahoe Regional Planning Agency* ("*South Lake Tahoe*"), 625 F.2d 231 (9th Cir. 1980), which generally bars political subdivisions from challenging state law on constitutional grounds in federal court. The court's

application of *South Lake Tahoe* was error for at least two independent reasons: *First*, unlike other cases in the *South Lake Tahoe* line of jurisprudence, Congress has expressly conferred substantive, enforceable rights on local government entities that create standing independent of any constitutional claim; and *Second*, this case presents a purely defensive, pre-enforcement challenge.

### A. Congress Conferred Explicit, Substantive Rights–and Standing to Enforce Those Rights–on Local Government Officials and Entities.

In a mistaken application of the *South Lake Tahoe* doctrine, the district court dismissed Appellants' federal claims. The district court, however, failed to properly appreciate a key distinction between Appellants' situation and that of plaintiffs to whom *South Lake Tahoe* has previously been applied–one that this Court has previously indicated could be dispositive.

Unlike prior cases in the *South Lake Tahoe* line, here Appellants invoke a substantive statutory right conferred explicitly on political subdivisions and the officers of *political subdivisions* by Congress.

Across multiple statutes, federal law confers standing on Appellants to challenge state laws that infringe on these rights. For example, in a paragraph titled "Additional Authority of Government Entities"

10

(clearly conveying Congressional intent to create substantive, independent authority for government entities to whom the statute applies), 8 U.S.C. § 1373(b) provides that:

> Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or *local government entity* from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:
>
> (1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.
>
> (2) Maintaining such information.
>
> (3) Exchanging such information with any other Federal, State, or local government entity.

(emphasis added).

Similarly, under 8 U.S.C. § 1644: "Notwithstanding any other provision of Federal, State, or local law, no State or *local government entity* may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States." (emphasis added).

These are not solely constitutional claims, nor solely Supremacy Clause claims. They are, independently, claims arising under federal

11

statutory law that expressly confer rights on local government entities under Congress's power to regulate immigration and to define the jurisdiction of federal courts.

There is no doubt that Congress can establish the jurisdiction of this Court. *Cf. Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact."); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) (violation of a procedural right granted by statute is adequate for standing).

The district court mistakenly relied on *Okanogan School District #105 v. Superintendent of Public Instruction for Washington*, 291 F.3d 1161 (9th Cir. 2002), and *Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104 (9th Cir. 1999), for the proposition that *South Lake Tahoe* applies even where Congress has expressly conferred substantive rights on municipalities. Order, ER_009–010. But these cases do not support that proposition.

*Palomar* makes no reference, one way or the other, to the possibility that Congress could expressly grant municipalities substantive rights against their States. The closest that case comes is a general assertion by

plaintiffs that the State's action resulted in payments "below the rates required to be paid under . . . federal Medicaid law." 180 F.3d at 1106 (alteration in original). This asserts an alleged conflict between state and federal law, but does not assert any express conferral of rights or jurisdiction on municipalities; to the contrary, it appears the federal law in question applied to healthcare providers generally (most of whom are *not* governmental subdivisions). More to the point, the district court had expressly found that there was *not* a conflict between state and federal law. *Id.* at 1107 ("[T]he district court determined that DHS's practices were consistent with the Boren Amendment."). *Palomar* is inapposite.

The invocation of *Okanogan* is more fundamentally misguided. That case actually supports the Appellants' position. The *Okanogan* Court explained:

> We have declined to recognize an exception for Supremacy Clause claims . . . and there is no reason to except Okanogan on account of anything in particular that § 500 has to say about school districts. To the contrary, to the extent that § 500 names beneficiaries at all, it names *states* and *counties*. It does not mention school districts.

291 F.3d at 1165–66 (internal citations omitted, emphasis in original).

Had the *South Lake Tahoe* doctrine created a simple per se bar against all Supremacy Clause claims by all political subdivisions at all

13

times, the *Okanogan* Court would not have bothered to analyze § 500 for an exception. But the Court felt compelled to analyze whether school districts were expressly identified as beneficiaries–finding that the statute named only "states and counties." This analysis would be wholly unnecessary if Congress could never confer enforceable rights on municipalities. *Okanogan* thus lays out precisely why *South Lake Tahoe* does not apply here: unlike the federal statute in *Okanogan*, 8 U.S.C. §§ 1373 and 1644 expressly name "local government entit[ies]" as the beneficiaries of and parties protected by federal law. Citing it to support the opposite proposition was an error by the District Court.

The district court also erred in presuming that Congress cannot create substantive, enforceable rights by statute. The district court cited *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) in support of this erroneous presumption. However, in *Spokeo,* it was unclear whether the purely intangible, procedural right to correct credit information had caused concrete harm. 578 U.S. at 342–43. Furthermore, on remand, this Court confirmed that the injury *was* sufficiently concrete. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1118 (9th Cir. 2017).

Being deprived of substantive rights and barred by State law from taking specific action that federal law empowers one to take is a tangible, *concrete* harm, fully within the ambit of *Lujan*. Indeed, this Court has explicitly distinguished substantive harms from procedural harms and explained that, although procedural harms *may* be sufficiently concrete for Article III standing, substantive harms invariably are. *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 490 (9th Cir. 2019) ("A violation of a substantive right invariably offends the interests that the statute protects." (cleaned up)). In *Eichenberger v. ESPN, Inc.*, this Court explained that *Spokeo* required further analysis and the "plaintiff had to plead additional harm to obtain standing" because "*Spokeo* concerned *procedural* violations of the FCRA that would not invariably injure a concrete interest." 876 F.3d 979, 983 (9th Cir. 2017) (emphasis original). By contrast, where *substantive* right is at issue, it "suffers *any time*" the right is thwarted. *Id.* at 983–84.

Here, 8 U.S.C. §§ 1373 and 1644 grant Appellants the substantive right to share immigration information with federal authorities–free from interference by any state or local law. The Sanctuary State Law directly and concretely deprives Appellants of that right.

15

Even if the rights guaranteed to Appellants under federal law could be characterized as procedural, Appellants plead the requisite additional concrete harm described in *Spokeo*. The Sanctuary Law causes an increase in illegal alien population that harms Appellants' interests, including by causing decreased revenue as a result of residents and workers who do not pay taxes, decreased property tax revenue as a result of decreased property values, increased expenditures on criminal enforcement, labor and health regulation enforcement, traffic and parking enforcement, public services, and operation of jail facilities. *See* SAC, ER_090–092, ¶¶ 129-140. As in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), Appellants also pled constitutional harms insofar as the Sanctuary State law curtails speech by the city, city officials, and Sheriff, which is protected both by the First Amendment and federal law, *e.g.*, 8 U.S.C. §§ 1373 and 1644. The District Court's reliance on *Spokeo*'s language about "elevating intangible harm" is completely disconnected from the pleadings, law, and facts of this case.

In *Akins*, the Supreme Court confirmed that a plaintiff who "arguably falls within the zone of interests to be protected or regulated by the statute in question" and who has been prevented from obtaining the

16

benefits conferred by the statute has both Article III and prudential standing. 524 U.S. at 20-21 (cleaned up). The "local government entity" explicitly empowered by statute to exchange immigration information with the federal government is precisely the party within the zone of interests Congress intended to protect.

None of the three elements of constitutional standing explained in *Lujan* is in doubt. Appellants, positioned as they are between the rock of state law and the hard place of federal law, are clearly subject to an injury in fact, both from deprivation of substantive federal rights and from concrete harm to their proprietary interests and constituents. Neither the District Court nor Appellees bothered to waste a word on causation or redressability, because Appellants' injuries are caused by California's unlawful Sanctuary State Law and will be promptly redressed once enforcement of that Law is enjoined. The only meaningful question about standing is the application of *South Lake Tahoe*. The answer is simple: it does not apply.

## B. South Lake Tahoe Does Not Apply Because This Is a Defensive, Pre-Enforcement Challenge.

The *South Lake Tahoe* doctrine was designed to prevent political subdivisions from using the federal courts to resist their parent state's

authority when no actual harm threatens. That rationale is wholly absent here. Unlike other cases in the *South Lake Tahoe* line, this is not a mere challenge to an unlawful policy or an attempt to satisfy personal constitutional predilections. This case presents a genuine Morton's Fork—a scenario in which any course of action available to Appellants will result in concrete legal jeopardy.

There is concrete criminal liability, plausibly pled and plausibly imminent, on both branches of the fork. Appellants explained that the actions required under the Sanctuary State Law amount to federal crimes under, among other laws, 18 U.S.C. § 4, because they require nondisclosure of known immigration-related felonies, including: improper entry and re-entry into the United States, 8 U.S.C. §§ 1325(a) and 1326; establishing "a commercial enterprise for the purpose of evading any provision of the immigration laws," 8 U.S.C. § 1325(d); and bringing in and harboring aliens, 8 U.S.C. § 1324. *See, e.g.*, SAC, ER_104–108 ¶¶ 201-221. Thus, complying with the Sanctuary State Law *requires* criminal violations of Federal law; complying with Federal law *requires* violating the Sanctuary State Law. There is no path that allows the individual Appellants to violate only their own consciences, and only a suit in federal court allows

Appellants the certainty to comply with the law. Thus, *South Lake Tahoe* does not apply to the Individual Appellants.

*South Lake Tahoe*'s holding was based on the fact that, in that case, there was "a course of action which subjects the[ plaintiffs] to no concrete adverse consequences." 625 F.2d at 237. The *South Lake Tahoe* Court noted that its own plaintiffs could simply comply with the challenged ordinances–there was a safe course. *Id.*

Here, there is no safe course available to the Plaintiffs. If they comply with the Sanctuary State Law, they risk criminal prosecution under federal law for harboring illegal aliens, concealing federal felonies, and conspiring to impede federal officers. If they comply with federal law, they risk enforcement action by California's Governor and Attorney General, who have repeatedly promised to pursue local officials who violate the Sanctuary State Law. Our federal courts have long refused to put parties "to the choice between abandoning [their] rights or risking prosecution." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging

the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted).

This is not mere speculation. California's own government officials have publicly, repeatedly, and specifically stated their intent to enforce the Sanctuary State Law. SAC, ER_071-072 ¶¶ 52-53; ER_092 ¶ 138; ER-094-095 ¶¶ 154; ER_098-099 ¶ 174; ER_101 ¶ 188; ER_103-104 ¶ 199; ER_108 ¶ 220; ER_114 ¶ 254; ER_115 ¶ 261; ER_116 ¶ 266. Other states have already moved against local officials who cooperated with federal immigration enforcement. Colorado has already disciplined local police officers for sharing information with ICE. Sheriff Todd Rowell, *Administrative Review of Caroline Dias-Goncalves Incident*, MESA COUNTY SHERIFF'S DEPARTMENT, (July 30, 2025), https://tinyurl.com/2p42jcx2, https://perma.cc/K8H3-95TB.

The Department of Justice has issued formal memoranda directing the prosecution of sanctuary law violators and has actually brought criminal charges against sitting judges and a sitting member of Congress for obstructing ICE operations. The district court's suggestion that federal prosecution was not a credible threat was an inappropriate factual

20

determination made on a motion to dismiss, in contravention of the standard requiring all reasonable inferences to be drawn in Appellants' favor.

Because this is a pre-enforcement defensive action–not a political subdivision's attempt to challenge its state's superior authority out of mere policy disagreement–the underlying logic of *South Lake Tahoe* does not apply, and its per se bar on standing should not be extended to this case.

## II.    Alternatively, *South Lake Tahoe* Was Wrongly Decided, and This Court Should Overrule It En Banc.

Although Appellants maintain that *South Lake Tahoe* does not apply here, Appellants also preserve for potential *en banc* review their argument that *South Lake Tahoe* was wrongly decided. Appellants are mindful that a panel of this Court is without power to overrule *South Lake Tahoe*, as "only the court sitting en banc may overrule a prior decision of the court." *Morton v. De Oliveira*, 984 F.2d 289, 292 (9th Cir. 1993).

*South Lake Tahoe* is fundamentally judge-made law, a doctrine recognized exclusively within the Ninth Circuit. *See, e.g.*, *Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104, 1110 (9th Cir. 1999)

21

(Hawkins, J., concurring) ("Certainly the Ninth Circuit is alone in having barred Supremacy Clause challenges by political subdivisions against their parent states.") (collecting cases from the Fifth, Tenth, and Eleventh Circuits expressly rejecting a per se rule, and cases from the Fourth and Sixth Circuits suggesting their opposition to such a rule); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 630 (10th Cir. 1998) ("The only circuit to bar Supremacy Clause challenges by political subdivisions against their parent state has been the Ninth Circuit. . . . [W]e remain persuaded that the better rule is the one supported by *Rogers* [*v. Brockette*, 588 F.2d 1057 (5th Cir. 1979)] and [*Housing Auth. of the*] *Kaw Tribe* [*of Indians v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991)].").

Every other Circuit Court to have considered the matter has held to the better-supported rule that political subdivisions of a state have standing to challenge state law on Supremacy Clause grounds. *City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*, 937 F.3d 1278, 1282 (9th Cir. 2019) (Nelson, J., concurring) ("[T]he Second, Fifth, and Tenth Circuit approaches [permitting Supremacy Clause challenges] remain faithful to the driving force behind our rule—the unique relationship between state subdivisions and their creating states.").

22

This unanimity outside of the Ninth Circuit reflects the shaky foundation upon which the *South Lake Tahoe* doctrine was built from the outset. This foundation has since been further undermined, as standing doctrine at the Supreme Court has evolved considerably since 1980. As Judge Nelson explained in *San Juan Capistrano*, "the meaning of 'standing' has changed" since the cases that *South Lake Tahoe* relied on were decided. 937 F.3d at 1282 (Nelson, J., concurring). When the cases underlying *South Lake Tahoe* "were decided, 'standing was not seen as a preliminary or threshold question' as it is today. Instead, '[a] party had standing or a "right to sue" if it was correct in its claim on the merits that the statutory or constitutional provision in question protected its interests.'" *Id.* (quoting *Rogers v. Brockette*, 588 F.2d 1057, 1070 (5th Cir. 1979)) (alterations in original).

In other words, what this Court has treated as a standing question through the *South Lake Tahoe* line of cases is built on an outdated understanding of standing inconsistent with modern jurisprudence. *Indian Oasis-Baboquivari Unified Sch Dist. No. 40 of Pima Cnty., Ariz. v. Kirk*, 91 F.3d 1240, 1250 (9th Cir. 1996) (Reinhardt, J., dissenting) ("The majority does not and cannot explain why school districts should be denied

23

standing to sue their states or how a per se bar on standing can be reconciled with *Lujan* or literally dozens of other modern standing cases."). If this Court determines that *South Lake Tahoe* can be applied here, then the en banc Court should reconsider and overrule the doctrine.

## III. The Law Enforcement Appellants Have Standing Based on a Credible Threat of Personal Criminal Prosecution.

Even if South Lake Tahoe applied to the City Plaintiffs–which, as demonstrated above, it does not–the Huntington Beach Police Chief and Riverside County Sheriff Chad Bianco (collectively, the "Law Enforcement Appellants") have independent, personal standing based on a credible threat of criminal prosecution.

The district court dismissed the Law Enforcement Appellants' claims by misreading *South Lake Tahoe* as foreclosing standing whenever officials face criminal liability for enforcing–or refusing to enforce–a challenged statute. But *South Lake Tahoe* held only that the threat of civil liability was "too attenuated and conjectural" to supply the plaintiffs with a basis for standing. 625 F.2d at 239. The Court's concern–preventing officials from "convert[ing] all officials charged with executing statutes into potential litigants"—is absent here. *Id*. at 238. *South Lake Tahoe*'s hypothetical criminal scenario involved criminal exposure that

24

would arise only from an official's voluntary decision not to comply with the challenged statute. Here, compliance itself is the source of criminal exposure.

This case is fundamentally different. The Law Enforcement Appellants have no safe harbor option. As explained above, compliance with the Sanctuary State Law does not give them a way to avoid criminal jeopardy–it makes criminal jeopardy inevitable. The Sanctuary State Law requires the Law Enforcement Appellants to:

- Conceal, harbor, and shield illegal aliens from detection, in violation of 8 U.S.C. § 1324(a)(1)(A);

- Conceal from federal authorities the actual commission of a felony cognizable by a court of the United States, in violation of 18 U.S.C. § 4;

- Conspire to commit offenses against the United States, in violation of 18 U.S.C. § 371;

- Conspire to impede officers of the United States from the discharge of their official duties, in violation of 18 U.S.C. § 372; and

25

- Engage in misleading conduct to prevent persons from communicating information about federal offenses to federal law enforcement, in violation of 18 U.S.C. § 1512.

*See* SAC, ER_075–077 ¶¶ 63-73; ER_99–ER_101 ¶¶ 177-189; ER_104–ER_108 ¶¶ 201-21.

Complying with the Sanctuary State Law thus requires the commission of these federal crimes. There is no path that allows the Law Enforcement Appellants to comply with California law while also complying with federal criminal law. The exposure here is concrete, particularized, and direct–not the speculative, civil, and discretionary harm that concerned *South Lake Tahoe*.

The Supreme Court has expressly held that a plaintiff threatened with criminal prosecution has standing to challenge the relevant statute. *Steffel v. Thompson*, 415 U.S. 452 (1974). *South Lake Tahoe* drew a sharp distinction between civil and criminal exposure in its standing analysis, expressing concern only about the attenuated possibility of *civil* liability faced by the plaintiffs there. 625 F.2d at 237–39. The Court never suggested that officials facing a genuine, unavoidable threat of *criminal* prosecution would be similarly barred from seeking relief.

26

Indeed, *South Lake Tahoe*'s entire rationale—that there was a safe course available and no concrete adverse consequences from either path—is wholly inapplicable where compliance with state law itself mandates the commission of federal crimes. Here, the Law Enforcement Appellants face exactly the kind of concrete, personal criminal jeopardy that *Steffel* recognized as a sufficient basis for pre-enforcement standing. *South Lake Tahoe* offers no bar to that claim.

Nor is the threat of federal prosecution merely abstract or conjectural. The SAC plausibly alleged: (1) Appellants are required daily to comply with the Sanctuary State Law, thereby committing the federal offenses identified above—a concrete and ongoing exposure imposed by operation of law; (2) the Attorney General of the United States and her designee issued formal, department-wide memoranda specifically instructing U.S. Attorneys to investigate and prosecute such misconduct, naming 18 U.S.C. § 371 and 8 U.S.C. §§ 1324 and 1373 as the applicable statutes; and (3) the federal government has in fact arrested and charged government officials for precisely this type of conduct, including a sitting federal Congresswoman, a sitting Wisconsin state court judge, and a sitting New Mexico state court judge. *See* ER_042 n.1.

27

As discussed above, the district court's determination that these allegations were insufficient to establish a credible threat of prosecution was an inappropriate foray into factual dispute on a motion to dismiss. At the pleading stage, all well-pleaded allegations must be accepted as true and all reasonable inferences drawn in Appellants' favor. The SAC's allegations more than satisfy that standard.

Even if *South Lake Tahoe*'s language about criminal liability were somehow applicable, the district court still erred. The discussion of criminal liability in *South Lake Tahoe* was dicta—the holding was explicitly grounded in the lack of civil liability. And even if it were not dicta, *South Lake Tahoe* does not apply here because the criminal exposure in that case would only arise from an affirmative choice not to comply with the challenged statute. Here, complying with the Sanctuary State Law generates unavoidable federal criminal exposure without any element of discretion.

Because the Law Enforcement Appellants face an unavoidable, credible threat of personal criminal prosecution from which they cannot escape by simply enforcing the Sanctuary State Law, *South Lake Tahoe* does not apply, and the district court erred in dismissing their claims.

28

## IV.  The District Court Erred in Dismissing Claims 6 and 7 on Eleventh Amendment Grounds.

The district court dismissed Claims 6 and 7—alleging violations of California Penal Code §§ 31 and 32 (aiding and abetting; accessory after the fact) and the California Constitution—on Eleventh Amendment grounds. This was error for three independent reasons.

### A.  Congress Abrogated California's Eleventh Amendment Immunity Through 8 U.S.C. §§ 1373 and 1644.

The Eleventh Amendment's immunity is not absolute. Congress may abrogate it by making its intent "unmistakably clear in the language of the statute." *Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989) (cleaned up). The district court held that 8 U.S.C. §§ 1373 and 1644 do not clearly express congressional intent to abrogate sovereign immunity. This was error.

Sections 1373 and 1644 are uniquely and unambiguously worded to preempt "any other provision of Federal, State, or local law"—including any state law that would "prohibit, or in any way restrict" a local government entity from exchanging immigration status information with federal authorities. 8 U.S.C. §§ 1373(b), 1644. The Sanctuary State Law does exactly what these sections prohibit: it expressly and broadly restricts local government entities from sending immigration information to

29

federal authorities. Congress's unambiguous preemption of any state or local restriction on this right constitutes the necessary clear legislative statement abrogating sovereign immunity. *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1173 (9th Cir. 1984).

The congressional record reinforces this reading. In enacting §. 1373, the House Judiciary Committee stated that the provision was designed "to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and" DHS. This language confirms that Congress intended no state law—including a state's invocation of sovereign immunity—to block enforcement of the rights conferred by § 1373. The same intent is reflected in the parallel House Conference Report for § 1644, which used identical language as the House Judiciary Committee to explain the meaning of § 1644. 3 H.R. Conf. Rep. 104-725, at 383, 1996 U.S.C.C.A.N. 2649, 2771 (1996) (Conf. Rep. to Welfare Reform Act, codified at 8 U.S.C. § 1644).

## B.    The *Ex Parte Young* Exception Applies to Individual Defendants Governor Newsom and Attorney General Bonta.

Even if the State of California retains Eleventh Amendment immunity, individual Defendants Governor Newsom and Attorney General Bonta cannot invoke that immunity for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908), provides a well-established exception permitting suits against state officials in their official capacities for prospective injunctive relief to remedy ongoing violations of federal law. *Steshenko v. Gayrard*, 70 F. Supp. 3d 979, 988-89 (N.D. Cal. 2014).

The district court dismissed the *Ex parte Young* argument, but only as to Claims 6 and 7 because they are "fundamentally grounded in State law." ER_017. However, the Appellants alleged an *Ex Parte Young* claim as an independent cause of action against Newsom and Bonta based on the same allegations stated in "Claims for relief One through Five and Eight through Nine." SAC, ER_116–117, ¶¶ 263-67. Thus, nonsensically, the district court dismissed the Appellants' *Ex Parte Young* claim only as to claims for which the Appellants had not alleged it. Because the district court did not dismiss the Appellants' *Ex Parte Young* claim as to the allegations in claims for relief one through five and eight through nine, it was error for the district court to dismiss Newsom and Bonta from the

31

case. Even by the district court's own analysis, the Appellants' *Ex Parte Young* claim remains very much alive.

Furthermore, the district court's conclusion that the *Young* exception does not apply to the state law claims here was also incorrect. ER_017 (citing *Doe v. Regents of Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018)). Its characterization misunderstands the nature of Claims 6 and 7. California criminal statutes requiring proof of an underlying criminal act cannot be resolved without determining whether the Sanctuary State Law violates federal immigration law. Because the relevant underlying acts are violations of federal statutes—8 U.S.C. §§ 1324, 1325, and 1326—these claims necessarily require resolution of substantial, disputed federal questions and fall within *Ex parte Young*'s scope. Moreover, the district court's reasoning creates an untenable result: if California could immunize itself from any challenge to its Sanctuary State Law by characterizing the available claim as grounded in State law, no relief would be available in any forum—a result that cannot be correct.

## C. This Court Has Federal Question Jurisdiction Over Claims 6 and 7 Independent of Sovereign Immunity.

Even apart from the Eleventh Amendment, this Court has federal question jurisdiction over Claims 6 and 7 under 28 U.S.C. § 1331

pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), which held that claims that "appear[ ] in state raiment" may nonetheless be litigated under federal question jurisdiction where they "necessarily raise a stated federal issue, [that is] actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314.

Claims 6 and 7 satisfy this test. California Penal Code §§ 31 and 32 require an underlying criminal act. The underlying criminal acts alleged here—harboring illegal aliens, concealing federal felonies, and conspiring to impede federal officers—are violations of federal immigration and criminal law. The parties' rights and obligations under California law cannot be determined without interpreting and applying these federal statutes. Whether the Sanctuary State Law violates the California Constitution also cannot be resolved without assessing whether federal immigration law—which broadly preempts state law in this field—controls. *Arizona*, 567 U.S. at 395. These federal issues are "actually disputed and substantial" and appropriately belong in federal court. *Grable*, 545 U.S. at 314.

33

Congress's express approval of local government cooperation in immigration enforcement confirms that the federal interest in resolving these questions is overwhelming. There is nothing to suggest that resolving them in federal court would "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id.* Federal courts are precisely the appropriate venue for determining whether a state law impermissibly interferes with a comprehensive federal regulatory scheme.

## V. The District Court Abused Its Discretion by Dismissing Without Leave to Amend.

The district court dismissed all claims "WITHOUT LEAVE TO AMEND." ECR 52 at 15. This was an abuse of discretion.

Leave to amend a pleading should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).

This Court has held that "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." E*minence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The "futility" standard is demanding: leave to amend is appropriately denied only when "no set of facts can be proved under the amendment to the pleadings that

34

would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).

That standard is nowhere close to satisfied here. This was the first successful attack on the sufficiency of Appellants' pleadings, giving Appellants a "first opportunity to cure those deficiencies." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016). In such circumstances, Appellants "should be afforded an additional opportunity to present an adequate pleading." *Id.*

Amendment would not be futile. If the Law Enforcement Appellants were permitted to amend to add claims in their personal as well as their official capacities—as they requested in their opposition to the motion to dismiss, ER_048-050—the personal standing concerns identified by the district court would be addressed. The DOJ memoranda directing prosecution of sanctuary law violations, the actual criminal charges brought against government officials for obstructing ICE operations, and the enforcement actions taken by other states against local officials all reinforce that Appellants' legal position has substantial merit and that amendment would not be futile.

35

The district court's denial of leave to amend—summarily and without analysis—was therefore an abuse of discretion warranting reversal.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the district court's order dismissing all claims and remand for further proceedings on the merits. At a minimum, the Court should reverse the dismissal of the Law Enforcement Appellants' claims and allow them to amend to add claims in their personal capacities. Appellants additionally request that, if this Court affirms on any claim or issue, it do so without prejudice and remand with leave to amend.

The conflict between California's Sanctuary State Law and federal immigration law presents a substantial, concrete, and unresolved federal question. Appellants are on the front lines of that conflict, facing an irreconcilable choice between violating California law and violating federal criminal law. Federal courts are the appropriate forum to resolve such a conflict and should not close their doors to the very parties most directly harmed by it.

Dated: April 15, 2026          Respectfully Submitted,

By:    /s/ *James Rogers*
        James K. Rogers
        *Senior Counsel*
        Ryan T. Giannetti
        *Counsel*
        America First Legal Foundation

        Michael Vigliotta
        *City Attorney*
        City of Huntington Beach

        *Attorneys for Appellants*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** Case No. 26-15

I am the attorney or self-represented party.

**This brief contains** 6,856 **words, including** 0 words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ⦿ complies with the word limit of Cir. R. 32-1.

- ◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

- ◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

- ◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

- ◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.

- ◯ complies with the length limit designated by court order dated _____.

- ◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/James Rogers **Date** 04/15/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Form 8 *Rev. 12/01/22*